UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| PERRY L. ELAM, | ) |
| Plaintiff, | ) Civil Action No. 6: 07-253-DCR |
| V. | ) |
| | ) **MEMORANDUM OPINION** |
| DHANANJAI MENZIES, M.D., | ) **AND ORDER** |
| Defendant. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the Defendant Dhananjai Menzies' ("Dr. Menzies") motion for summary judgment. [Record No. 28] Dr. Menzies contends that Plaintiff Perry Elam's ("Elam") medical malpractice claim [Record No. 1] is barred by the applicable statute of limitations. For the reasons discussed below, the Court agrees and will grant the Defendant's motion.

**I.   Background**

Dr. Menzies is a board-certified interventional cardiologist who opened a specialty practice in Somerset, Kentucky, after relocating from Cooperstown, New York. Elam first visited Dr. Menzies on July 15, 2005, complaining of chest pain, shortness of breath, and extreme fatigue. Upon examining Elam and conducting a stress test, Dr. Menzies concluded that there were multiple lesions on Elam's left anterior descending artery. He recommended to Elam and his family that Elam undergo cardiac catheterization, a procedure requiring the placement of stents within the affected arteries. Dr. Menzies informed Elam that if the

catheterization was not successful, then Elam would have to undergo by-pass surgery. He also discussed by-pass surgery with Elam's family. During and after this discussion, Elam and his family expressed reservations about by-pass surgery because they perceived it to be the more painful and invasive of the two procedures. They stated that, if possible, they preferred to fix Elam's health problems without a by-pass operation. With their consent, Dr. Menzies performed the catheterization procedure, placing three stents in different locations of the affected artery. After examining Elam a week after the procedure, Dr. Menzies found no adverse effects and concluded that Elam was convalescing.

Approximately one month after the catheterization, Elam returned to Dr. Menzies' office complaining of sharp chest pain. Dr. Menzies prescribed medication. Thereafter, Dr. Menzies moved from Somerset back to Cooperstown, New York, and Elam went to another Somerset cardiologist, Dr. Khaled Saleh. Based on Elam's complaints of chest pain, Dr. Saleh referred him to an interventional cardiologist, Dr. Larry Breeding, who examined Elam and determined that Elam would need to undergo by-pass surgery. Specifically, Dr. Breeding told Elam that the stents were obstructing the blood vessel and they would need to be by-passed. A final physician, Dr. Michael Sekela, was consulted, and he eventually performed quadruple bypass surgery on Elam on October 24, 2005.

On June 22, 2007, Elam filed a complaint against Dr. Menzies in the Pulaski Circuit Court, alleging that Dr. Menzies negligently performed the catheterization procedure. His listed damages are medical expenses, loss of income and income-earning capacity, and pain and suffering. The suit was removed to this Court and Dr. Menzies subsequently filed the current

motion for summary judgment on the basis that Elam's claim is time barred by § 413.140(1)(e) of the Kentucky Revised Statutes.

**II.     Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986); *Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

The party moving for summary judgment bears the burden of showing conclusively that no genuine issue of material fact exists. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). Once a moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The nonmoving party cannot rely upon the assertions in its pleadings; rather, that party must come forward with probative evidence such as sworn affidavits, to support its claims. *Celotex*, 477 U.S. at 324. In making this determination, the

Court must review all the facts and the inferences drawn from those materials in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587. Additionally, a federal court sitting in diversity must apply the law of the forum state of the claims asserted. *Lukowski v. CSX Transp., Inc.*, 416 F.3d 478, 484 (6th Cir. 2005).

### III.   Analysis

Dr. Menzies contends that Elam's cause of action accrued no later than October 24, 2005, when Elam underwent the quadruple by-pass surgery. Under this calculation, his lawsuit – filed on June 22, 2007 – would be time barred as falling well outside the one-year statute of limitations prescribed by the Kentucky legislature. K.R.S. § 413.140(1)(e) (stating that a legal action for negligence or malpractice against a physician, surgeon, or licensed hospital must be commenced within one year after the cause of action accrued).

Kentucky law provides that a cause of action is deemed to accrue "at the time the injury is first discovered or in the exercise of reasonable care should have been discovered." *Id*. § 413.140(2). This provision, commonly referred to as the "discovery" rule, favors a plaintiff by tolling the commencement of a statute of limitations until the plaintiff has some knowledge or notice that he may have a claim. The discovery rule requires that: (1) the plaintiff is aware that he has been wronged; and (2) the plaintiff is aware of who has committed the wrong. *Wiseman v. Alliant Hosps., Inc.*, 37 S.W.3d 709, 712 (Ky. 2000) (citing *Drake v. B.F. Goodrich Co.*, 782 F.2d 638, 641 (6th Cir. 1986)).

The relevant inquiry concerns when Elam first became aware of Dr. Menzies' alleged negligence. Dr. Menzies contends that this awareness was established when Elam underwent

by-pass surgery. The logical basis for Dr. Menzies' argument is that by-pass surgery was a clear indicator that the catheterization procedure performed by Dr. Menzies was not successful. Indeed, in his deposition, Elam stated that "[Dr. Menzies] said that if it couldn't be stented, it would result in by-pass surgery." [Record No. 28, Attach. 6] Additionally, Elam stated that: "I told [Dr. Menzies] that I wanted to be fixed, but if it was at all possible . . . I didn't want my chest busted open unless it had to be. So that was where I stood with [Dr. Menzies] on it." [*Id.*] Elam was aware that an unsuccessful stenting would result in a by-pass. This awareness alone most likely satisfies the two-pronged standard. Since Elam knew that by-pass surgery was the consequence of an unsuccessful catheterization (stenting) procedure, the by-pass surgery itself established that Dr. Menzies' treatment may have been problematic. This knowledge was then confirmed by others.

Dr. Breeding, a physician consulted after the catheterization procedure, also raised the possibility of negligence when he explained to Elam the need for a by-pass operation. Elam recalls Dr. Breeding telling him that "the stents were obstructed into the vessel, to where that [sic] they could not re-stent. They had to be bypassed. . . . And [Dr. Breeding] said that he would have to do a bypass graft . . . to get around those stents." [Record No. 28, Attach. 7] When asked if Elam understood Dr. Breeding to be critical of Dr. Menzies' catheterization procedure, Elam replied "He seemed to be, a little bit." [Id.]

Elam argues that these statements do not conclusively establish his awareness of a potential medical malpractice claim against Dr. Menzies. However, even if these statements

were not sufficient to put Elam on notice of his claim, his subsequent attorney consultation should have raised the issue.

Elam visited an attorney approximately five months after his bypass surgery, in early 2006. Elam states that the purpose of his visit was not related to asserting a claim against Dr. Menzies specifically, but was instead related to television commercials he had seen regarding the dangerousness of stents used in heart procedures. [Record No. 32] He argues that he did not become aware of a medical malpractice claim until his attorney had him meet with medical experts after the initial visit regarding stents.

In spite of retaining this attorney in early 2006, Elam did not file suit against Dr. Menzies until June 2007. If Elam was aware that the stents used in his catheterization procedure might be dangerous in early 2006, he was then simultaneously aware of a potential medical malpractice claim against Dr. Menzies for performing that procedure. At that point, Elam should have known that his injury originated from the catheterization procedure, and that the person who performed the procedure was Dr. Menzies. Elam's general defense is that, as a layperson, he did not thoroughly understood the medical language used by Drs. Menzies and Breeding in discussing the different procedures that he underwent. Of course, "one who possess no medical knowledge should not be held responsible for discovering an injury based on the wrongful act of a physician." *Wiseman*, 37 S.W.3d at 712-713. Elam also notes that he held Dr. Menzies in the highest regard and trusted his abilities as a physician.

In interpreting the discovery rule, there is a fine line between the affirmative duties a plaintiff must take to assure his own rights and the ignorance he may be forgiven due to his

status as a layperson. However, Kentucky law supports Dr. Menzies' position that Elam had sufficient information to assert his claim well before June 22, 2007. In *Vannoy v. Milum*, 171 S.W.3d 745 (Ky App. 2005), the plaintiff sued his doctor for medical malpractice based on injuries he sustained after his doctor prescribed an antibiotic. He took the antibiotic for an extended period of time, and during that time, he began to have dizzy spells and damage to his middle ear. His doctor, as well as other specialists, attributed the harm in part to the use of the antibiotic. After half a year of working with various physicians to resolve the continued damage to his middle ear, he gathered his medical records and consulted an attorney. The plaintiff stated that he did not have a specific claim or reason for consulting the attorney, but simply wanted to see if he had a case.

The Kentucky Court of Appeals found that the plaintiff's cause of action had accrued when he was informed that the antibiotic might be the cause of his injury.

> It is undisputed that [the plaintiff] knew both of his harm, [middle ear damage] and its associated symptoms, as well as the fact that the [antibiotic] therapy was, at least in part, the cause of that harm. In addition, he had knowledge of [his doctor's] role in prescribing and continuing the [antibiotic] therapy. [The plaintiff], upon obtaining his records, had in his hands all relevant facts upon which he now rests his present claim of negligence.

*Id*. at 749.

*Vannoy* can be distinguished from the other leading case on this issue, *Wiseman*. 37 S.W.3d 709. In *Wiseman*, the plaintiff was injured when her doctor left a piece of surgical instrument near her tailbone during the performance of a routine gynecological procedure. For five years following the procedure, she experienced lower back pain and consulted a number of doctors who were unable to ascertain the source of her pain. Eventually, the surgical instrument

was found and removed from her body. The Kentucky Supreme Court found that her cause of action did not accrue at the time of the original gynecological procedure, but at the time the surgical instrument was found.

The difference in *Wiseman*, compared to *Vannoy* and the instant case, is the level of information held by the plaintiff. In *Wiseman*, the plaintiff was never informed by a doctor that the cause of her pain originated from the previous gynecological procedure and she never consulted a lawyer. She was operating without any knowledge of what could have caused her pain. Here, Elam was aware that an unsuccessful catheterization would necessitate a by-pass surgery. He was also informed by Dr. Breeding that the catheterization procedure may not have been properly performed. In addition, he consulted and retained an attorney after seeing advertisements regarding the dangerousness of the stents used in his catheterization procedure. The latest of these facts occurred in early 2006. Therefore, Elam's claim – filed in late June 2007– is time-barred under the one-year statute of limitations.

### IV.  Conclusion

Based on the above analysis, it is hereby

**ORDERED** that Defendant Dhananjai Menzies' motion for summary judgment [Record No. 28] is **GRANTED**. All other pending motions [Record Nos. 26 and 27] are **DENIED** as moot. This case is **DISMISSED**, with prejudice.

This 4th day of February, 2009.

